## HUNT v. DISTRICT OF COLUMBIA.
### No. 7276.

United States Court of Appeals for the District of Columbia.

Argued Oct. 10, 1939.

Decided Nov. 6, 1939.

of the District a tax return as of July 1 of each year, containing a true statement of his personal property for the purpose of taxation. Tit. 20, D.C.Code 1929, Sec. 753, 757. Petitioner duly filed his return on the form and in the manner required by the Assessor of the District. The item in question was shown on the return as follows: "Equity in stock and bonds being bought on margin $33,277.73." In the instructions under the heading "Intangible Property," is this admonition, printed in bold type: "Do not itemize stock and bonds held on a marginal account but report your equity under item 4-E above". This form of personal property tax return had been in continuous use in the District of Columbia for about twenty years, and the shares of stock in a speculative account on margin had during all of this time been taxed on the basis of the equity only. Petitioner was assessed on his return, and the amount ascertained by the Board of Personal Tax Appraisers to be due was entered upon the tax books for the year in question, and petitioner was duly notified and demand made for the payment of the tax in accordance with the statutory provisions. Petitioner paid in two installments as required by law,[1] but some three months after the first payment the Corporation Counsel ruled that stocks held on margin were properly taxable on their full value. Upon receipt of this opinion, the Board of Personal Tax Appraisers "dug out" of the files all returns to which the opinion was applicable, and made reassessments on the new basis. Petitioner was notified to supplement the information contained in his return, and upon compliance was billed accordingly. Subsequently, under threat of distraint, he paid the additional tax under protest and brought this proceeding to recover in the Board of Tax Appeals for the District of Columbia under the provisions of Sec. 6, Tit. IX, of the D. C. Revenue Act of 1937.[2] The decision was against him, and he then appealed to this court.[3] The question we have to decide is whether the new assessment was without authority of law. Both sides agree that the decision turns upon the provision in Sec. 769, Tit. 20, D.C.Code 1929, as follows:

"If, at any time within any current year, property subject to taxation under the pro-

Eugene R. West, of Washington, D. C., for petitioner.

Elwood H. Seal, Corp. Counsel, D.C., Vernon E. West, Principal Asst. Corp. Counsel, D.C., and Glenn E. Simmon, Asst. Corp. Counsel, D.C., all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

Petitioner is domiciled in the District of Columbia, and on July 1, 1937, was the owner of certain intangible property, consisting of money, shares of stocks in his possession, and other shares of stocks in the possession of a broker. This controversy concerns only the latter item. The District of Columbia laws require that every resident shall file with the Assessor

---

[1] Tit. 20, D.C.Code 1929, Sec. 758.
[2] 50 Stat. 673, as amended, 52 Stat. 356, 374, Tit. 20, D.C.Code 1929, (Supp. IV) Sec. 977.

[3] Tit. 20, D.C.Code, (Supp. IV) Sec. 975.

visions of this section shall have been omitted from assessment, said board of personal-tax appraisers shall immediately proceed to assess the same for the then current year, giving notice in writing to the persons or corporations so assessed, who shall have a right of appeal within ten days from date of said notice."

 And with this statement of the issue we are in accord, for no other provision authorizes any supplemental or amended assessment after the taxpayer's return has been accepted and used as the basis of a completed original assessment. As we said in Tumulty v. District of Columbia, App.D.C., 102 F.2d 254, at page 261: "When property has once been finally assessed it cannot be again assessed. Commonwealth v. Robinson, Norton & Co., 146 Ky. 218, 142 S.W. 406; City of Georgetown v. Graves' Adm'r, 165 Ky. 676, 178 S. W. 1035. It is not the policy of the law to favor reassessments. Unless the taxing statute expressly provides for a reassessment, such action is void. State v. April Fool Gold Min. & Mill. Co., 26 Nev. 87, 64 P. 3. If the property has been validly assessed against its owner, the liability becoming final, there is no power in the statute for a revision of the assessment or the reassessment of the property. People's Sav. Bank v. Layman, [C.C., 134 F. 635]". See also 3 Cooley on Taxation (4th ed., 1924), Secs. 1054, 1077.

Petitioner contends that the reassessment was not of property subject to taxation and omitted from assessment, but of property included in the return, assessed, and duly taxed.

The District insists that the original assessment was based upon an incomplete return made by petitioner, and that this constituted an omission to the extent that the return was incomplete, and consequently that the shares of stock upon which the assessment in question was made were "omitted" from the return and likewise from the original assessment.

 The rule approved by the great weight of authority in this country is that the power to assess "omitted property" does not carry with it the power to revalue property already assessed. Davidson v. Franklin Ave. Inv. Co., 129 Minn. 87, 151 N.W. 537; Woll v. Thomas, 1 Ind.App. 232, 27 N.E. 578; Williams v. Segur, 106 Ind. 368, 1 N.E. 707; German Sav. Bank v. Trowbridge, 124 Iowa 514, 100 N.W. 333; Anniston City Land Co. v. State, 185 Ala. 482, 64 So. 110; City of Georgetown v. Graves' Adm'r, 165 Ky. 676, 178 S.W. 1035; Commonwealth v. American Tobacco Co., 96 S. W. 466, 29 Ky.Law Rep. 745; Sweetsir v. Chandler, 98 Me. 145, 56 A. 584; Commonwealth v. Ashland Coal and Iron Ry. Co., 154 Ky. 673, 159 S.W. 538; Delta Land & Timber Co. v. Police Jury, 169 La. 537, 125 So. 585; Woodbury County v. Talley, 153 Iowa 28, 129 N.W. 967; Langhout v. First Nat. Bank, 191 Iowa 957, 183 N.W. 506; 2 Cooley on Taxation (4th ed., 1924), Sec. 820.

The laws in relation to taxation of personal property in the District of Columbia for the year in question require that the Assessor of Taxes annually prepare a printed blank schedule of all tangible personal property and all intangible personalty subject to taxation in the District; that when the schedule is ready for delivery, notice thereof be given by advertisement in a newspaper published in the District of Columbia, and a copy of the schedule be delivered to any citizen applying therefor at the office of the assessor; the citizen is required within thirty days after the last publication of the advertisement to fully and truthfully fill out the blanks, showing the amount and value of his taxable property as of July 1 of the year in question, to sign the same, and make affidavit to the truth thereof. When this is done, the Board of Personal-Tax Appraisers, or any one of the members thereof, is required to assess the property at its fair cash value and enter the same in the columns upon the blanks provided for that purpose and enter the figures upon the books for taxation for each fiscal year, and the tax so ascertained to be due is payable in two equal installments in the months of September and March succeeding. If the Board is not satisfied as to the correctness of the return, it may reject it and from the best information at hand assess the taxpayer in such amount as seems just, and must give him notice of rejection, with the right of appeal. If the citizen refuses to file the return and the information at hand does not afford a satisfactory basis for assessment, the commissioners of the District of Columbia may apply to the United States District Court for an order compelling the filing of a sworn return.

 The agreed facts in this case show that petitioner obtained and filled out the official blank precisely as required by instructions contained thereon, and in apt time

returned the same to the office of the assessor; that the amount of tax found to be due thereon was calculated in accordance with the statutory procedure and entered on the books of the assessor's office, and notice of the determination was given to petitioner, who promptly paid the tax. The District authorities thereafter changed their minds from the view that stocks on margin were taxable to the customer only to the extent of his equity to the view that they were taxable to the extent of their full value. Can we say that these stocks were "omitted from assessment"? The return of the taxable value of the shares, as we have pointed out, was made by petitioner in accordance with the instructions printed on the official blank. The District says, however, that, since the names of the corporations issuing the stocks and the number of shares thereof were not given, the valuation returned by petitioner was not sufficient, and therefore that the excess of value above the amount stated by him was omitted value and, in contemplation of the statute, omitted property. Of the cases cited to support this argument, only Bell's Trustee v. City of Lexington, 120 Ky. 199, 85 S.W. 1081, 1082, is even nearly in point. The taxpayer in that case reported intangibles in lump sums without specification of securities held, so that the assessor was unable to impose a true valuation. The court held that the taxpayer had failed in his duty to make "fair and full disclosure by items of all the property subject to taxation", and since his neglect prevented the proper assessment, the specific items were considered as "omitted". The distinction in this case is clear. The local statute imposes on the taxpayer the duty truthfully to fill out the proper blanks in the schedule furnished by the assessor. Tit. 20, D.C.Code 1929, Sec. 752. The taxpayer complied with this duty. He made a true statement of his investment in marginal stocks according to the legal requirement and was taxed on the item. The difference between the amount of the investment and the value of the stocks was, at most, an error in valuation and not an omission, since omitted property means property which is not assessed at all and not property which is merely undervalued. See 2 Cooley on Taxation, Sec. 820, and cases cited supra.

Much authority supports this conclusion. In Sweetsir v. Chandler, supra, the taxpayer failed to file a return. The board assessed him for "money at interest in excess of debts" in the sum of $321,350. The assessors had no knowledge of any particular items of money at interest, and the assessment represented only their judgment of what the taxpayer was liable for. Subsequently the taxpayer became insane, and upon the appointment of a guardian it developed that he had bonds and stocks of the total value of $551,586, all of which was liable to taxation. The board thereupon made a reassessment covering the actual items as described by the guardian's inventory. On a suit to enforce the tax, the court held that the board, having originally assessed the bonds and stocks under a general classification, could not afterwards assess them as individual items at a higher figure. "It must appear that the property itself had not been assessed at all * * *. It is not sufficient that the assessors, through lack of information or otherwise, have erred in their judgment of the quantity, quality, or value of the thing assessed. Dresden v. Bridge, 90 Me. 489, 38 A. 545. If the assessors have once assessed * * * that assessment cannot be revised by a supplemental assessment". [98 Me. 145, 56 A. 586.]

In City of Georgetown v. Graves' Adm'r, supra, the taxpayer had made no return at all, because he believed he was not a resident of the taxing city. The city assessed him with a lump sum, the tax on which he paid after suit. Some time later the city sued to recover an additional amount, on the ground that the lump sum assessment was less than the value of taxable property. The court there said [165 Ky. 676, 178 S.W. 1036]: "Where a party is assessed with notes and bonds in a lump sum, and the particular notes and bonds are not specified or described in any manner whatsoever, a case of omitted property is not made out by merely showing that the taxpayer, in fact, owned notes and bonds of a greater value than that fixed by the assessment"—and applied the rule that, when once property has been finally assessed, it cannot be again assessed even though its value may have been in the first instance placed too low.

In Davidson v. Franklin Ave. Inv. Co., supra, the taxpayer owned improved real estate. The taxing authorities assessed the land for taxation, but omitted to assess the building. The court stated the question to be—did the auditor have power to reassess as omitted property real estate which had

been assessed and on which taxes had been paid, because the property was undervalued in the years in question by failure of the assessing office to take note of the building— and answered the question in the negative, saying that it was not a case of omitted property but of undervalued property.

Other cases are to the same effect. In this view, we are bound to hold that the assessment was irregular and without authority of law. Consequently, there is no need to consider other points raised by the petition for review.

Reversed.